UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| BOBBY R. WILLIAMS, | ) | |
|---|---|---|
| *Plaintiff*, | ) | Case No. 2:24-cv-124 |
| v. | ) | Judge Atchley |
| WASHINGTON COUNTY DETENTION CENTER, CORRECTIONS OFFICER ARP, and TENNESSEE DEPARTMENT OF CORRECTIONS, | ) | Magistrate Judge Wyrick |
| *Defendants*. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, a prisoner housed in the Washington County Detention Center, filed a pro se civil rights action under 42 U.S.C. § 1983 [Doc. 2] and a motion for leave to proceed *in forma pauperis* [Doc. 1]. For the reasons set forth below, the Court will grant Plaintiff's motion and dismiss the complaint for failure to state a claim upon which relief may be granted.

I. **MOTION TO PROCEED *IN FORMA PAUPERIS***

Under the Prison Litigation Reform Act ("PLRA"), a prisoner bringing a civil action may apply for permission to file suit without prepaying the filing fee. *See* 28 U.S.C. § 1915(a). It appears from a review of Plaintiff's motion to proceed *in forma pauperis* [Doc. 1] that he lacks the financial resources to pay the filing fee in a lump sum. Accordingly, pursuant to 28 U.S.C. § 1915, this motion will be **GRANTED**.

Plaintiff will be **ASSESSED** the civil filing fee of $350.00. The custodian of Plaintiff's inmate trust account will be **DIRECTED** to submit to the Clerk, U.S. District Court, 220 West Depot Street, Suite 200, Greeneville, Tennessee 37743, twenty percent (20%) of Plaintiff's preceding monthly income (or income credited to Plaintiff's trust account for the preceding

month), but only when such monthly income exceeds ten dollars ($10.00), until the full filing fee of three hundred fifty dollars ($350.00) as authorized under 28 U.S.C. § 1914(a) has been paid to the Clerk. 28 U.S.C. § 1915(b)(2).

To ensure compliance with this fee-collection procedure, the Clerk will be **DIRECTED** to mail a copy of this Memorandum Opinion and Order to the custodian of inmate accounts at the institution where Plaintiff is now confined. The Clerk will also be **DIRECTED** to furnish a copy of this Memorandum Opinion and Order to the Court's financial deputy. This Memorandum Opinion and Order shall be placed in Plaintiff's prison file and follow him if he is transferred to another correctional institution.

## II. SCREENING OF COMPLAINT

### A. Screening Standard

Under the PLRA, district courts must screen prisoner complaints and *sua sponte* dismiss any claims that are frivolous or malicious, fail to state a claim for relief, or are against a defendant who is immune. *See, e.g.*, 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999). The dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)" of the Federal Rules of Civil Procedure. *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive an initial review under the PLRA, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Courts liberally construe pro se pleadings filed in civil rights cases and hold them to a less stringent standard than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, allegations that give rise to a mere possibility that a plaintiff might later establish

2

Case 2:24-cv-00124-CEA-CRW   Document 5   Filed 07/23/24   Page 2 of 9   PageID #: 18

undisclosed facts supporting recovery are not well-pled and do not state a plausible claim. *Twombly*, 550 U.S. at 555, 570. Further, formulaic and conclusory recitations of the elements of a claim which are not supported by specific facts are insufficient to state a plausible claim for relief. *Iqbal*, 556 U.S. at 681.

To state a claim under 42 U.S.C. § 1983, a plaintiff must establish that he was deprived of a federal right by a person acting under color of state law. 42 U.S.C. § 1983; *Braley v. City of Pontiac*, 906 F.2d 220, 223 (6th Cir. 1990) (stating that "[s]ection 1983 does not itself create any constitutional rights; it creates a right of action for the vindication of constitutional guarantees found elsewhere").

### B. Plaintiff's Allegations

Around 6:00 a.m. on June 14, 2024, Plaintiff woke up, grabbed his cup, and stood in the breakfast serving line at the Washington County Detention Center ("WCDC") [Doc. 2 at 5–6]. Plaintiff's section of the jail is the last to be served breakfast, and Plaintiff was the last inmate in line that morning [*Id.* at 6]. The inmate in front of Plaintiff was poured the last of the milk from a gallon jug, so Plaintiff retrieved his breakfast tray and sat to eat [*Id.*]. When he finished, he placed his breakfast tray on the serving cart and returned to his bunk [*Id.*]. Approximately one minute later, he saw an inmate trustee enter the pod with two styrofoam cups of milk [*Id.*]. Corrections Officer ("CO") Arp took the cups of milk to the officer observation desk and made a hand signal toward Plaintiff's section of the pod [*Id.*]. Plaintiff "naturally thought he was making a motion for [Plaintiff] to come to the . . . desk [since] [he] was the only inmate that did not receive milk" [*Id.*]. But instead, CO Arp asked Plaintiff, "What do you need[?]" [*Id.*]. Plaintiff told CO Arp that he did not get any milk, to which CO Arp replied, "You[']r[e] too old for milk" [*Id.*]. CO Arp gave one cup of the milk "to an inmate that had already received milk" and instructed another inmate to

3

take the second cup of milk to an inmate in Plaintiff's section who had already received milk as well [*Id.* at 6–7]. And "per WCDC policy and procedure[,] an inmate" cannot be denied a drink with his meal [*Id.* at 7].

Plaintiff returned to his bunk "feeling humiliated, depressed[,] and treated very unfair" [*Id.*]. Plaintiff maintains that aside from CO Arp's conduct being discriminatory toward Plaintiff, Defendant Arp also violated WCDC policy by giving inmates Styrofoam cups, which are considered contraband [*Id.*]. Plaintiff filed both a handwritten grievance and a kiosk grievance about the incident [*Id.*].

Plaintiff also mentions three "additional incidents" as problematic [*Id.* at 4]. First, he has applied "to participate in programs" but has not been selected for participation, though "other inmates that enrolled after [him] have been selected to participate" [*Id.*]. Second, he has unsuccessfully applied to work in the inmate trustee program [*Id.*]. The "[l]ast reason" he was given for not being selected was "due to not being sentenced, but many other inmates [who] are not sentenced [are] currently allowed to work in the trustee work detail program" [*Id.*]. And finally, Plaintiff has requested to speak with a Veterans Administration Representative ("VA Rep"), but his request has been ignored [*Id.*].

Aggrieved, Plaintiff filed the instant suit against the WCDC, CO Arp, and the Tennessee Department of Correction ("TDOC"), asking the Court to "[r]emove" CO Arp "from his position"; require the WCDC to put in "a proper grievance procedure"; have a VA Rep or advocate at the WCDC; and award him a cash settlement [*Id.* at 5, 8].

4

C.  Analysis

   1.  Defendants Not Subject to Liability

Plaintiff has named both the WCDC and the TDOC as Defendants in this action [*Id.* at 5]. But the WCDC is a building; it is not a "person" subject to liability under § 1983. *Cage v. Kent County Corr. Facility*, No. 96-1167, 1997 WL 225647, at *1 (6th Cir. May 1, 1997) (stating that "[t]he district court also properly found that the jail facility named as a defendant was not an entity subject to suit under § 1983"). Accordingly, the WCDC is **DISMISSED**.

Additionally, the TDOC is an arm of the State of Tennessee, and therefore, suit against the TDOC is suit against the State itself. *See Hix v. Tenn. Dep't of Corr.*, 196 F. App'x 350, 355 (6th Cir. 2006) (holding TDOC is equivalent of the "State"). However, "a State is not a person within the meaning of § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989); *Hix*, 196 F. App'x at 355 (holding TDOC is not a "person" within meaning of § 1983). And the Eleventh Amendment prohibits suits against a state or its agencies in federal court for damages, unless Congress has abrogated its immunity, or the state has expressly waived it. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99–101 (1984); *Quern v. Jordan*, 440 U.S. 332, 345 (1979). The State of Tennessee has not waived its immunity to suit under § 1983. *Berndt v. State of Tennessee*, 796 F.2d 879, 881 (6th Cir. 1986). Accordingly, Plaintiff cannot maintain suit against TDOC, and TDOC is **DISMISSED**.

   2.  CO Arp

Plaintiff maintains that CO Arp (1) violated WCDC policy and procedure and (2) discriminated against him [*See generally* Doc. 2]. But no liability lies against CO Arp for his failure to follow WCDC policy, as an institution's policies and procedures are not matters of federal law. *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982) (holding claims under §

5

1983 can only be brought for "deprivation of rights secured by the constitution and laws of the United States"); *Stanley v. Vining*, 602 F.3d 767, 769 (6th Cir. 2010) ("It has long been established that violation of a state statute or regulation is insufficient alone to make a claim cognizable under § 1983."). Accordingly, the Court **DISMISSES** any claim relating any Defendant Arp's failure to follow institutional policy.

Next, Plaintiff complains that CO Arp denied Plaintiff the opportunity to have milk that CO Arp allowed into the pod following breakfast [Doc. 2 at 6]. And Plaintiff states that CO Arp did so while stating that Plaintiff was "too old" for milk [*Id.*]. The Court liberally construes these allegations as implicating the Equal Protection Clause, which provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST., AMEND. XIV, § 1. The clause is essentially a direction that all persons similarly situated should be treated alike. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). And to state a viable equal protection claim, "a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'" *Ctr. For Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (quoting *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby, Mich.*, 470 F.3d 286, 299 (6th Cir. 2006)).

Plaintiff does not allege that the treatment he received burdened a fundamental right or targeted a suspect class. First, Plaintiff does not have a fundamental right to milk. Prisoners are entitled only to sufficient adequate nutrition to maintain good health. *Cunningham v. Jones*, 567 F.2d 653, 659–60 (6th Cir. 1977) (providing that where a prisoner's diet is sufficient to sustain the prisoner's good health, no constitutional right has been violated). And nothing in Plaintiff's allegations suggest that his health was endangered because he did not receive milk with breakfast on one occasion. Second, Plaintiff does not identify himself as a member of a suspect class. While

6

Plaintiff intimates that CO Arp refused to provide him milk based on his age, "age is not a suspect classification under the Equal Protection Clause." *Kimel v. Fl. Bd. of Regents*, 528 U.S. 62, 83 (2000). Therefore, to state a cognizable equal protection claim, Plaintiff must show that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). And to be actionable, a plaintiff must allege "more than an isolated incident of a negligent failure to" provide equal protection of the laws. *Puckett v. Cox*, No. 71-1775, 456 F.2d 233, 235 (6th Cir. 1972) (citation omitted).

Plaintiff does not allege that he did not receive milk with his breakfast because of CO Arp's conduct. And he has not alleged any facts to suggest that he was similarly situated in all relevant respects to the inmates who received milk in the unit at CO Arp's direction. *See Paterek v. Vill. of Armanda*, 801 F.3d 630, 650 (6th Cir. 2015) ("'Similarly situated' is a term of art" requiring a comparator who is "similar in 'all relevant respects'." (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011))). Moreover, Plaintiff does not allege that CO Arp deprived Plaintiff of a benefit to which he was entitled when he gave two other inmates milk in the pod. Instead, he alleges only that these inmates received extra portions of milk in contraband containers. Therefore, any inequality experienced by Plaintiff because of CO Arp's conduct is unrelated to a legally protected interest Plaintiff possessed. *See, e.g., Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (holding "injury in fact" requires "an invasion of a legally protected interest") (citation omitted). Accordingly, Plaintiff has not stated a claim for unequal protection of the law by CO Arp's denial of milk to him on a singular occasion, and the Court **DISMISSES** this claim.

Finally, to the extent Plaintiff maintains that CO Arp's conduct otherwise humiliated him, the Court finds such an allegation fails to state a constitutional claim, as one does not have a protected federal right not to be embarrassed or offended. *See, e.g. Ivey v. Wilson*, 832 F.2d 950,

7

954 (6th Cir. 1987) (finding verbal harassment or threats by prison official does not constitute punishment in constitutional sense); *White v. Hamilton Cnty. Jail*, No. 1:08-cv-53, 2011 WL 864855, at *8 (E.D. Tenn. Mar. 10, 2011) (finding the plaintiff's "claim that some of the defendants engaged in verbally abusive behavior, laughed at him, and ridiculed him, fails to state a constitutional violation"). Accordingly, the Court **DISMISSES** this claim.

### 3. "Additional Incidents" [Doc. 2 at 4].

Plaintiff also maintains that he was denied participation in programs and trustee jobs, and that his request to speak with a VA Rep was ignored [*Id*.]. But Plaintiff has not identified any person(s) responsible for these alleged violations. And to state a claim against an individual, Plaintiff must adequately plead that the particular Defendant, through his or her own actions, has violated the Constitution. *Iqbal*, 556 U.S. at 676; *see also Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (providing that "a complaint must allege that the defendants were personally involved in the alleged deprivation of federal rights" to state a claim upon which relief may be granted).

Nor does Plaintiff link these alleged violations to an unconstitutional policy or custom of Washington County, and therefore, he cannot maintain a claim against the County itself. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 708 (1978) (Powell, J., concurring) (explaining that a municipality can only be held liable for harms that result from a constitutional violation when that underlying violation resulted from "implementation of its official policies or established customs").

But even if Plaintiff had named a person(s) or entity responsible for these alleged violations, he could not otherwise proceed with these claims, because prisoners possess no constitutional right to such privileges. *See, e.g., Martin v. O'Brien*, 207 F. App'x 587, 590 (6th Cir. 2006) (holding "a prisoner does not have a constitutional right to prison employment or a

8

Case 2:24-cv-00124-CEA-CRW   Document 5   Filed 07/23/24   Page 8 of 9   PageID #: 24

particular prison job"); *Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) ("Prisoners have no constitutional right to rehabilitation, education, or jobs."). And Plaintiff's allegation that his request to speak to a VA Rep has been ignored is insufficient to state a plausible claim, as Plaintiff does not allege that his attempts to contact a VA Rep on his own have been impeded, or that WCDC officials have otherwise prevented him from making such contact. Accordingly, the Court **DISMISSES** these "additional incidents" allegations for failure to state a claim upon which relief may be granted.[1]

### III. CONCLUSION

For the reasons set forth above:

1. Plaintiff's motion for leave to proceed *in forma pauperis* [Doc. 1] is **GRANTED**;

2. Plaintiff is **ASSESSED** the civil filing fee of $350.00;

3. The custodian of Plaintiff's inmate trust account is **DIRECTED** to submit the filing fee to the Clerk in the manner set forth above;

4. Plaintiff's complaint will be **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted; and

5. The Court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. *See* Rule 24 of the Federal Rules of Appellate Procedure.

**SO ORDERED.**

/s/ Charles E. Atchley, Jr.
**CHARLES E. ATCHLEY, JR.**
**UNITED STATES DISTRICT JUDGE**

---

[1] Plaintiff's allegation that other inmates are allowed to work and/or attend programs likewise fails to state an equal protection claim, because, aside from the fact that he has no protected interest in such things, he has not alleged any facts that would allow the Court to infer that he is similarly situated in all relevant respects to inmates who have been allowed work/program privileges. *See Paterek*, 801 F.3d at 650.

9